IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **TERRY WHITE #503525** | § | |
| | § | |
| **V.** | § | A-16-CA-059-LY |
| | § | |
| **LORIE DAVIS AND** | § | |
| **DAVID BLACKWELL** | § | |

# REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court are Plaintiff's complaint (Document No. 1); Plaintiff's Motion for Default Judgment (Document No. 26); Plaintiff's Motion for Summary Judgment (Document No. 27); Plaintiff's Motion for Declaratory Judgment and Permanent Injunction (Document No. 29); Defendants' Motion for Summary Judgment (Document No. 30); and Plaintiff's reply thereto (Document No. 32). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

1

# I. BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Hughes Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Plaintiff files this action pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the American Indian Religious Freedom Act ("AIRFA"). Plaintiff originally sued Director William Stephens and Warden John Werner. Subsequently, Director Lorie Davis was substituted for Stephens and Warden David Blackwell was substituted for Werner.

Plaintiff asserts he is a Choctaw Indian and adheres to Native American religious practices. According to Plaintiff, in 1988 he was convicted of murder and sentenced to 75 years in prison. Plaintiff is currently 62 years of age, and according to Plaintiff, in poor health. Specifically, Plaintiff asserts he was diagnosed with coronary artery disease in 2011, is an insulin dependent type-II diabetic, and has hepatitis C.

Plaintiff requested from the warden permission to grow his hair long for religious reasons. Plaintiff's request was denied, and he was informed he should grow a beard instead. Plaintiff maintains it is his deeply held religious belief that he must have long hair upon his death in order to be recognized and taken into eternity by his ancestors, none of whom grew beards. Plaintiff asserts, prior to entering prison, he had never cut his hair.

Plaintiff seeks a declaration that his rights were violated under the Constitution and Federal Laws of the United States. He seeks permission to immediately grow his hair long without restriction but within TDCJ rules under which female prisoners must abide. Although Plaintiff included his request for relief in his original complaint, Plaintiff also filed a Motion for Declaratory

Judgment and Permanent Injunction. Plaintiff's motion is unnecessary and should be dismissed, as his request for relief will be considered in his original complaint.

Plaintiff moves for summary judgment. He contends his request to grow the length of his hair is similar to inmates' requests to grow beards for religious reasons. He argues AIRFA guarantees complete religious freedom for Native Americans with no exceptions for incarceration. Plaintiff contends federal law, constitutional law, and treaties allow Plaintiff to grow long hair at whatever cost may be incurred by TDCJ.

Defendants also move for summary judgment. They argue Plaintiff's First Amendment claims are barred by Fifth Circuit precedent. Defendants further argue AIRFA does not create a cause of action or any judicially enforceable rights. Finally, they argue Plaintiff's RLUIPA claim is without merit, because TDCJ's grooming policy is the least restrictive means to advance its compelling interests.

Defendants rely on Longoria v. Dretke, 507 F.3d 898 (5th Cir. 2007) (per curiam). In that case, a Texas inmate alleged that his religion barred him from cutting his head hair and sought an exemption from TDCJ's short-hair policy. Id. at 900. The Fifth Circuit dismissed his RLUIPA claim as frivolous, explaining that the court was bound by Diaz v. Collins, 114 F.3d 69 (5th Cir. 1997). The Longoria court noted that in Diaz, after an evidentiary hearing, the district court had found that "long hair ... facilitates the transfer of contraband and weapons into and around TDCJ institutions" and "requiring prisoners to have short hair makes it more difficult for escaped prisoners to alter their appearance." Longoria, 507 F.3d at 904 (alteration in original) (quoting Diaz, 114 F.3d at 72–73). The Fifth Circuit then concluded that the evidentiary showing in Diaz was "sufficient to

3

preclude [the inmate's] RLUIPA claim" to grow long, unshorn head hair. Longoria, 507 F.3d at 904.

Plaintiff responds that Defendants do not challenge his deeply held religious beliefs and do not deny TDCJ's grooming policy against long hair substantially burdens Plaintiff's ability to practice his faith. Plaintiff agrees Defendants have a compelling interest in promoting and maintaining unit safety, good order and discipline and controlling costs. However, Plaintiff argues TDCJ's grooming policy banning long hair is not the least restrictive means of achieving their own compelling interests.

Plaintiff disputes he raised First Amendment claims pursuant to 42 U.S.C. § 1983. He appears to waive any First Amendment claims he may have made.

Plaintiff also moves for a default judgment. However, Defendants were not in default at the time Plaintiff filed his motion. His Motion for Default Judgment should be denied.

## II. ANALYSIS

### A. Summary Judgment Standard

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is axiomatic that the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine dispute of material fact is not created by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (quotation marks and citation omitted).

4

B.  First Amendment

Plaintiff alleges in his original complaint that Defendants violated his "rights under the Constitution." Construing Plaintiff's claims liberally, Plaintiff is asserting a claim for a violation of his First Amendment rights. However, in Plaintiff's response to Defendants' Motion for Summary Judgment, Plaintiff makes clear he did not intend to make such a claim. Because Plaintiff makes clear he does not intend to pursue a claim pursuant to 42 U.S.C. § 1983 for a violation of his First Amendment rights, Defendants' Motion for Summary Judgment as to this claim is unnecessary.

C.  AIRFA

AIRFA declares it is "the policy of the United States to protect and preserve for American Indians their inherent right of freedom to ... exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians...." 42 U.S.C. § 1996. However, AIRFA does not create a cause of action or any judicially enforceable rights. Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439 (1988). Accordingly, summary judgment is appropriate with regard to Plaintiff's AIRFA claim.

D.  RLUIPA

1.  *Legal Standard*

RLUIPA provides, in relevant part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

5

42 U.S.C. § 2000cc–1(a). RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Under RLUIPA, Plaintiff carries an initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of his religion. Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004). Once Plaintiff makes this showing, Defendants bear the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. Id.; see also Sossamon v. Texas, 563 U.S. 277, 281 (2011). Defendants' burden "is not to show that it considered the claimant's proposed alternatives but rather to demonstrate those alternatives are ineffective." Ali v. Stephens, 822 F.3d 776, 786 (5th Cir. 2016).

As explained by the Fifth Circuit in Davis v. Davis, 826 F.3d 258 (5th Cir. 2016), Congress enacted RLUIPA to address "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, but expected courts entertaining RLUIPA challenges to also "accord 'due deference to the experience and expertise of prison and jail administrators.'" Id. at 264 (quoting Cutter v. Wilkinson, 544 U.S. 709, 716–17 (2005) (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on RLUIPA)). "Religious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials 'in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Id. at 264-65 (quoting Cutter, 544 at 723). Costs, limited resources, and prison security are all compelling state interests. Cutter, 544 at 723.

> As for the first prong of the government's burden—compelling interest—[the Fifth Circuit] recently noted that a policy's underinclusiveness may be relevant. Ali, 822 F.3d at 785. A policy is underinclusive if it "fail[s] to cover significant tracts of

conduct implicating [its] animating and putatively compelling interest." *Id.* (quoting Yellowbear v. Lampert, 741 F.3d 48, 60 (10th Cir. 2014) (Gorsuch, J.)). If a policy is underinclusive, this fact "can raise with it the inference that the government's claimed interest isn't actually so compelling after all." Id. (quoting Yellowbear, 741 F.3d at 60); see also Williams–Yulee v. Fla. Bar, 135 S. Ct. 1656, 1668, 191 L.Ed.2d 570 (2015) ("Underinclusiveness can ... reveal that a law does not actually advance a compelling interest.").

Ware v. La. Dep't of Corrections, No. 16-31012, 2017 WL 3205804, at *3 (5th Cir. July 28, 2017).

If a policy is underinclusive, the prison must provide "an adequate explanation for its differential treatment" in order to avoid the conclusion that the policy does not serve a compelling interest. Ali, 822 F.3d at 787.

Id.

If the government succeeds in showing a compelling interest as applied to the specific inmate, it must then show that its policy is the least restrictive means of achieving that interest. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal'" other than the challenged policy. Holt, 135 S. Ct. at 864 (alteration in original) (quoting Hobby Lobby, 134 S. Ct. at 2780). The Supreme Court has instructed that policies of prisons in other jurisdictions are relevant, but "not necessarily controlling," to the least restrictive means analysis. Id. at 866 (quoting Procunier v. Martinez, 416 U.S. 396, 414 n.14, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974)). On the one hand, RLUIPA does not "require[ ] a prison to grant a particular religious exemption as soon as a few other jurisdictions do so." Id. On the other hand, "when so many prisons offer an accommodation, a prison must, at minimum, offer persuasive reasons why it believes that it must take a different course." Id. Accordingly, in the face of evidence of contrary policies, we may not defer to prison officials' "mere say-so that they could not accommodate [the plaintiff's] request" because these other policies indicate that a less restrictive means may be available. Id. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." Id. at 864 (alteration in original) (quoting United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 815, 120 S. Ct. 1878, 146 L.Ed.2d 865 (2000)).

Id.

2.  *Individual Assessment*

Contrary to Defendants argument, Longoria does not foreclose Plaintiff's request for long hair. Plaintiff's RLUIPA claim must be evaluated in light of the security risk presented by Plaintiff as an individual. Holt v. Hobbs, 135 S. Ct. 853 (2015).

> The Government must also demonstrate that the "compelling interest test" is satisfied when applying the challenged law to the "particular claimant whose sincere exercise of religion is being substantially burdened." [Holt v. Hobbs, 135 S. Ct. 853, 863 (2015)] (quotation omitted). Thus RLUIPA requires a court to scrutinize "'the asserted harm of granting specific exemptions to particular religious claimants'" and look "'to the marginal interest in enforcing' the challenged government action in that particular context." Id. (quoting Burwell v. Hobby Lobby Stores, Inc., ––U.S. ––, 134 S .Ct. 2751, 2779, 189 L.Ed.2d 675 (2014)).

Davis v. Davis, 826 F.3d 258 (5th Cir. 2016).

> RLUIPA compels a "fact-intensive inquiry" into the particular costs and risks that the requested exemption engenders. Chance, 730 F.3d at 418 (quoting Moussazadeh v. Tex. Dep't of Criminal Justice, 703 F.3d 781, 795–96 (5th Cir. 2012)). We, in turn, have repeatedly conducted "case-specific inquiries" when addressing a RLUIPA claim. Id. at 411 (citing Garner, 713 F.3d at 245–46 and Moussazadeh, 703 F.3d at 795–96); see id. ("[O]ur RLUIPA analysis requires a careful consideration of each case's specific facts...."). For instance, we have even recognized that a holding against an inmate that assembled a "thin" record does not "foreclose" another inmate from subsequently demonstrating less restrictive means are available. Moussazadeh, 703 F.3d at 795; see also Yellowbear v. Lampert, 741 F.3d 48, 62 (10th Cir. 2014) ("[T]he feasibility of requested exceptions usually should be assessed on a 'case-by-case' basis, taking each request as it comes." (quoting O Centro, 546 U.S. at 436, 126 S. Ct. 1211)).

Ali, 822 F.3d at 784–85.

Defendants do not dispute that Plaintiff sincerely believes growing long hair is mandated by his faith and do not argue whether TDCJ's grooming policy substantially burdens his ability to grow long hair. Therefore, the Court focuses on whether TDCJ's short-hair grooming policy is the least

8

restrictive means to advance its compelling interests in maintaining security and safety and controlling costs in light of the security risk presented by Plaintiff.

Defendants assert Plaintiff is serving a 75-year sentence for murder and aggravated assault. They further assert Plaintiff is housed in a maximum security prison as a G2 offender and is not classified as a low-risk offender. Defendants maintain Plaintiff has had nine disciplinary offenses during his incarceration with the last having occurred in 2013. One disciplinary conviction was for threatening to inflict harm on a correctional officer. Defendants contend Plaintiff's behavior poses a threat to the order and safe operations of the Hughes Unit. Defendants argue granting Plaintiff's request to grow his hair long would place Plaintiff, other inmates, and unit staff at an unjustifiable risk.

Plaintiff responds he is housed in the least restrictive housing TDCJ now offers for offenders convicted of murder and was previously housed as an outside trusty, working as an electrician at the prison. Plaintiff provides a detailed history of his disciplinary convictions and contends Defendants over-exaggerated his violations.

While Plaintiff has had some disciplinary violations, his violations are not recent and nearly all are minor. Plaintiff's most recent violation was of a safety regulation, and it occurred nearly four years ago in 2013. Plaintiff explains he was found guilty of falling off of a stool he was standing on while fixing a light in the maintenance department where he worked as a master electrician. According to Plaintiff, he had no access to a ladder and suffered no injury.

Defendants do not dispute Plaintiff's assertion that his security classification is as low as an offender with a murder conviction can be classified, and before the classification policies were amended, Plaintiff worked as an outside trusty. However, pursuant to current classification policies,

Plaintiff is currently confined in the Hughes Unit, a maximum security prison that does not offer a trusty camp or dorms outside the security fence. Plaintiff has a G2 custody level, the second lowest security risk group in TDCJ. Plaintiff's G2 classification and minimal disciplinary record could support a finding of low risk.

Defendants assert the primary compelling interest implicated by allowing Plaintiff to wear unrestricted long hair is the security of the unit. First, Defendants suggest long hair would represent a heightened risk of injury to Plaintiff, because other offenders would be jealous of his special exception. Defendants further suggest, if Plaintiff's hair was long enough, he could use it as a weapon and it could be braided to conceal dangerous contraband.

Plaintiff argues the grooming policy is underinclusive, because it does not apply to female inmates. As mentioned previously, a policy's underinclusiveness can raise the inference that the interests allegedly served by that policy are not actually compelling. Ali, 822 F.3d at 785. In Ali, the inmate argued that the grooming policy was underinclusive because the prison permitted female inmates to have head hair that was much longer than a fist-length beard. Id. at 787. The Fifth Circuit agreed that the policy was underinclusive but concluded that the prison provided "an adequate explanation for its differential treatment." Id. Namely, testimony was given at trial that "the contraband threat posed by male inmates is qualitatively different than that of female inmates" because female inmates smuggled more non-dangerous items, such as lipstick, whereas male inmates smuggled more risky items, such as weapons. Id. This testimony was further supported by the district court's finding that there were fewer correctional officers per male inmate than female inmate, further aggravating the risk of contraband posed by male inmates. Id. Given this evidence, the circuit court concluded that the policy's underinclusiveness did not lead to the inference that the

policy did not serve a compelling interest because the prison had demonstrated that female inmates simply did not implicate that interest to the degree male inmates did. Id.

Here, Defendants provide essentially the same explanation regarding the grooming policy's underinclusiveness. For the same reasons as those provided in Ali the grooming policy's underinclusiveness does not lead to the inference that the policy did not serve a compelling interest. TDCJ clearly has "a compelling interest in staunching the flow of contraband into and within its facilities." Holt, 135 S. Ct. at 863.

Plaintiff also argues Defendants have not satisfied their burden of showing their policy is the least restrictive means of furthering its compelling interest of maintaining security because they fail to explain why TDCJ's grooming policies differ from those of the vast majority of other jurisdictions. Plaintiff points out 38 state prison systems and the federal prison system allow some form of exemption for long hair. As mentioned above, in the face of evidence that "many prisons offer an accommodation, a prison must, at minimum, offer persuasive reasons why it believes that it must take a different course." Holt, 135 S. Ct. at 866. Defendants provide none.

Defendants next assert prisons have a compelling interest in providing a safe environment in which inmates can serve their time and rehabilitate and controlling costs. Defendants contend a long hair exemption would require a burdensome amount of additional manpower to search offenders with unshorn hair. Defendants argue this increased manpower demand would place a tremendous strain on an already overburdened work force. In addition, Defendants assert searching an offender's hair requires the officer to stand in close proximity to the offender, increasing the risk of assault. They suggest having an inmate search his own hair would be useless since the inmate would know where the contraband is and move around it.

Plaintiff offers suggestions as to how TDCJ's security interests might be furthered without infringing on the ability of Plaintiff to exercise his religious right to grow long hair. First, Plaintiff suggests inmates may be required to be subjected to periodic hair searches similar to beard searches and similar to the searches they conduct of the hair of women inmates. Plaintiff contends these searches can be conducted by prisoners themselves under the careful watch of prison guards. Second, Plaintiff suggests TDCJ may restrict regulations already in place for hair which ban weaves, plaits, Afros, or any hair style in which contraband could be stored. Plaintiff contends any harm done to TDCJ's ability to maintain security and increased costs due to Plaintiff having long hair is little or none.

Defendants counter that the male offender population is roughly twelve times larger than the female population. They suggest, if numerous male offenders must have their hair combed through and searched, the effective operation of the prison will be encumbered. Defendants explain in the first eighteen months after TDCJ's grooming policies were changed to allow for religious beards, more than 84,000 requests for religious beards were approved. If similar numbers of male offenders wish to grow their hair long for religious reasons, Defendants contend their limited resources could be insufficient to maintain security.

"[C]ost reduction, as a general matter, is unquestionably a compelling interest of TDCJ." Moussazadeh v. Tex. Dep't of Criminal Justice, 703 F.3d 781, 795 (5th Cir. 2012). TDCJ relatedly has a compelling interest in maintaining the orderly administration of its operations. See Baranowski v. Hart, 486 F.3d 112, 125 (5th Cir. 2007). RLUIPA, however, "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." Garner v. Kennedy, 713 F.3d 237, 245 (5th Cir. 2013) (quoting 42 U.S.C. § 2000cc–3(c)). In determining

whether a cost is compelling, a court may need to "put th[e] amount in perspective" by measuring the projected expense against the resources devoted to that interest. Moussazadeh, 703 F.3d at 795.

In Davis v. Davis, 826 F.3d 258 (5th Cir. 2016), the Fifth Circuit remanded a case to the district court because genuine issues of material fact remain regarding the legitimacy of TDCJ's cost and security concerns created by the wearing of a long hair or a kouplock[1] by plaintiffs as low security risk Native American inmates and because the district court did not consider the plaintiffs' grooming-policy claim in light of the plaintiffs' individual circumstances.

In the case at hand, Defendants fail to provide the Court with any estimates regarding the number of inmates that are likely to request an exemption to the short-hair policy or projections as to the costs related to searching long hair. In making its individual assessment in this case, the Court is of the opinion genuine issues of material fact exist as to whether Plaintiff is a low-risk offender and whether TDCJ's short-hair grooming policy serves a compelling interest and is the least restrictive means of serving any such interest.

### III. RECOMMENDATION

The undersigned recommends that the District Court **DENY** Plaintiff's Motion for Default Judgment [#26], **DISMISS WITHOUT PREJUDICE** Plaintiff's Motion for Declaratory Judgment and Permanent Injunction [#29], **DENY** Plaintiff's Motion for Summary Judgment [#27], and **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment [#30] to the extent Plaintiff's claims brought against Defendants pursuant to the AIRFA are **DISMISSED WITH PREJUDICE**. The undersigned further recommends the Court set a conference to determine

---

[1] A 2 x 2 square-inch patch of unshorn hair.

whether Plaintiff seeks the appointment of counsel and establish a schedule to ensure this case timely proceeds to trial.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

**SIGNED** on August 1, 2017.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE